FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 04 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

QUORTESHIA JOHNSON

Criminal Information

No. 1:26-CR-341-SDG

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count One

*Access Device Fraud*

At all times relevant to this Information:

1. Unemployment Insurance ("UI") was a joint state and federal program that provided monetary benefits to eligible beneficiaries. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or about March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program, the Federal Pandemic Unemployment Compensation Program, and the Lost Wages Assistance Program.

2. In the State of California, the Employment Development Department ("CA-EDD"), based in Sacramento, California, administered the UI program.

3. Those seeking UI benefits from CA-EDD submitted an online application via the internet. Applicants had to provide certain information to establish

eligibility to receive UI benefits, including their name, Social Security number, and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The state workforce agency relied upon the information in the applications to determine UI benefits eligibility.

4. Once an application was approved, the CA-EDD typically distributed state and federal UI benefits electronically to a debit card issued by Bank of America, which claimants could use to withdraw funds and make purchases. These debit cards were sent via the U.S. Postal Service and other commercial interstate carriers to the addresses the claimants provided. Claimants could activate their debit card via telephone or the internet.

THE SCHEME TO DEFRAUD

5. During all times relevant to this Information, defendant JOHNSON was employed by a healthcare provider located in the Northern District of Georgia.

6. As part of the scheme and artifice to defraud, defendant JOHNSON, aided and abetted by others unknown to the Grand Jury, obtained the names, dates of birth, and Social Security numbers of unwitting individuals, including patients of the healthcare provider where defendant JOHNSON was employed.

7. Defendant JOHNSON filed and caused to be filed online applications for UI benefits using the personal identifying information that she unlawfully obtained. The online applications were false and fraudulent in that they falsely represented that the listed claimants submitted the applications for UI benefit payments,

2

when in fact the listed claimants had no knowledge of the claims and did not consent to the use of their personal identifying information on the claims.

8. The online submission of applications for UI benefits pursuant to this scheme caused interstate wire communications.

9. When CA-EDD approved a fraudulently submitted claim, Bank of America issued a debit card that was mailed to addresses provided by the purported claimant located in Alabama, California, and the Northern District of Georgia.

10. After the debit cards were received, the funds were depleted from the cards through cash withdrawals at ATMs, transfers to bank accounts that defendant JOHNSON owned and controlled, and debit card payments for dental care, luxury purchases, taxes, car payments, and trips, among other things.

11. One of the fraudulently submitted applications was in the name of M. W., who had no knowledge of the claim and nor consented to its submission. The application for UI benefits was electronically submitted on or about August 28, 2020, from an IP address that resolved to a location in the Northern District of Georgia. The CA-EDD approved the false and fraudulent claim.

12. On or about October 10, 2020, Bank of America issued to M. W. a debit card ending in 4622, which was mailed to an address in California.

### EXECUTION OF SCHEME

13. From on or about October 10, 2020, continuing to on or about October 10, 2021, in the Northern District of Georgia and elsewhere, the defendant, QUORTESHIA JOHNSON, aided and abetted by others unknown, did

3

knowingly traffic in and use an unauthorized access device, namely, a debit card ending in 4622 issued to M. W. by Bank of America on behalf of the California Employment Development Department, which could be used alone and in conjunction with another access device to obtain money, goods, services, and other things of value, and could be used to initiate a transfer of funds, and which were obtained with intent to defraud, and by such conduct did obtain things of value aggregating at least $1,000 during a one-year period, affecting interstate commerce thereby, in violation of title 18, United States Code, Section 1029(a)(2).

## Count Two
*Aggravated Identity Theft*

14. On or about October 21, 2020, in the Northern District of Georgia and elsewhere, the defendant, QUORTESHIA JOHNSON, aided and abetted by others unknown, did knowingly possess and use, without lawful authority, a means of identification of another person, that person being, M. W., during and in relation to committing the felony violation of access device fraud as alleged in Count One of this Information, in violation of Title 18, United States Code, Section 1028A(a)(1).

## Count Three
*Theft of Government Funds*

At all times relevant to this Information:

15. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering and enforcing federal

4

tax laws, including refundable tax credits, of the United States and collecting taxes owed to the United States.

*Employee Retention Credits*

16. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), enacted on March 27, 2020, provided for an Employee Retention Credit ("ERC") designed to encourage businesses to keep employees on their payroll during the COVID-19 pandemic. Subsequent legislation (the Taxpayer Certainty and Disaster Tax Relief Act of 2020, the American Rescue Plan Act, and the Infrastructure Investment and Jobs Act) modified and extended the ERC.

17. The ERC was available to eligible employers that paid qualified wages to some or all employees after March 12, 2020, and before January 1, 2022.

18. Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down by a government order due to the COVID-19 pandemic during 2020 or the first three calendar quarters of 2021; (b) experienced the required decline in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

19. The ERC amount was calculated based on the number of employees retained by an employer, qualified wages paid to employees, and how long employees were retained during the eligibility periods. In addition, there were maximum credits allowed per employee during the eligibility periods.

5

20. Eligible employers could claim ERCs in several ways, including on their federal employment tax returns or amended quarterly tax returns, submitted to the IRS. Eligible employers could also submit a request to the IRS for advanced payment of their ERC before they filed their tax returns.

21. If an ERC claim resulted in a payment owed to the eligible employer, that payment was disbursed by the IRS using money held by the United States Treasury.

*Defendant's Business Bank Accounts*

22. The Defendant was the organizer for Gold Mind Entertainment, LLC ("Gold Mind"), a company registered with the Georgia Secretary of State. On or about October 18, 2022, the Defendant opened a bank account ending in 1042, in the name of Gold Mind.

23. The Defendant was the organizer for Georgia Sandwich Company ("GA Sandwich"), a company registered with the Georgia Secretary of State. On or about March 1, 2023, the Defendant opened a bank account ending in 4380, in the name of GA Sandwich.

<u>Stolen United States Treasury Checks</u>

24. Beginning on a date unknown, but at least by March 13, 2023, and continuing through at least June 21, 2023, in the Northern District of Georgia and elsewhere, the defendant, QUORTESHIA JOHNSON, aided and abetted by others known and unknown to the United States Attorney, did receive, conceal, and retain money and things of value of the United States, namely United States

6

Treasury checks, the aggregated of which exceeded the sum of $1,000, and did so with the intent to convert the checks to her use and gain and knowing that said checks had been embezzled, stolen, purloined, and converted.

<u>Deposit of United States Treasury Checks</u>

25. From at least March 13, 2023, and continuing through at least June 21, 2023, the Defendant deposited stolen United States Treasury checks into her Gold Mind and GA Sandwich bank accounts.

26. For example, on or about March 13, 2023, the Defendant, aided and abetted by others, deposited four stolen United States Treasury checks. These checks totaled approximately $31,652.81 and were deposited into her bank account ending in 4380. An additional stolen United States Treasury check for $9,244.03 was deposited into her bank account ending in 1042. All of the stolen checks had been issued to Company 1 and were ERC payments owed to Company 1.

27. In addition to the checks identified in paragraph 26, the Defendant, aided and abetted by others, deposited or caused to be deposited, into her Gold Mind and GA Sandwich bank accounts, as well as bank accounts opened by others, the following stolen United States Treasury checks, representing ERC and other payments issued by the United States Treasury:

- Check issued to Company 2 in the amount of $30,151.79;
- Check issued to Victim 1 in the amount of $115,128.79;
- Check issued to Victim 1 in the amount of $63,210;

7

- Check issued to Company 3 in the amount of $139,197.55;

- Check issued to Company 3 in the amount of $123,723.70;

- Check issued to Company 4 in the amount of $440,987.98;

- Check issued to Company 5 in the amount of $221,112.67;

- Check issued to Victim 2 in the amount of $250,000; and

- Check issued to Company 6 in the amount of $139,011.35.

28. Following deposit of the stolen United States Treasury checks, the Defendant and others withdrew the funds by obtaining cashier's checks, sending wire transfers, making purchases, and conducting other withdrawals.

All in violation of Title 18, United States Code, Section 641 and 2.

**Forfeiture**

29. Upon conviction of the offense in Count One of this Information, the defendant, QUORTESHIA JOHNSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, a personal money judgment equal to the amount of proceeds obtained as a result of the offense(s).

30. Upon conviction of the offense alleged in Counts Three of this Information, the defendant, QUORTESHIA JOHNSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any

8

property constituting or derived from proceeds obtained directly or indirectly as a result of said violations and pursuant to Title 18, United States Code, Section 1029(c), any personal property used or intended to be used to commit said violations.

31. If any of the above-described forfeitable property, as a result of any act or omission of the Defendant: (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, the United States intends to seek forfeiture of any other property of said Defendant up to the value of the forfeitable property, pursuant to Title 21, United States Code, Section 853(p); as incorporated by Title 18, United States Code, Section 1029(d) and Title 28, United States Code, Section 2461(c).

THEODORE S. HERTZBERG
*United States Attorney*

*Tracia M. King*
TRACIA M. KING
*Assistant United States Attorney*
Georgia Bar No. 421380

*Kelly K. Connors*
KELLY K. CONNORS
*Assistant United States Attorney*
Georgia Bar No. 504787

600 U.S. Courthouse,
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181